OPINION *Page 2 
{¶ 1} Defendant-appellant Lawrence D. Baldwin appeals from his conviction and sentence in the Stark County Court of Common Pleas on one count of robbery a felony of the second degree in violation of R.C.2911.02(A) (2). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF FACTS AND THE CASE {¶ 2} On May 15, 2006 Dallas Young was working as the manager of the Save-A-Lot grocery store on West Tuscarawas Street in Canton, Ohio. That morning, around 8:15, while he was setting up the store and talking to a vendor, a male he vaguely remembered seeing in the store before came in asking for a job. Mr. Young spoke with the male saying something about having previously given him an application. Because Mr. Young was checking in a vendor, he asked a cashier, Jeanne Bergen, to go the office and get the male job seeker a "phone in application" telephone number. The store has a small office that is only for managers and employees who are checking their cash register drawers. No customers are allowed in the office.
 {¶ 3} Ms. Bergin went to the office to get the telephone number for the male. The door to the office closed but not all the way because of the dead bolt. As Ms. Bergin was writing down the telephone number, the male pushed on the door and asked her to give him the money. The male kept pulling his pants, like he was trying to reach for a weapon. Ms. Bergin, screaming and panicking, told the male that she had no money; the money was out in the cash registers. *Page 3 
 {¶ 4} Ms. Bergin's screaming attracted the attention of another employee who alerted the manager that something doesn't seem right. The manager started walking to the office and Ms. Bergin told him the male was trying to rob her. The male responded that he was not and fled the store, running down West Tuscarawas Street. Mr. Young started to follow the male, but stopped when he saw him reach into the waist of his pants like he was pulling out a gun. The incident was captured on the store's surveillance tape. The police were called.
 {¶ 5} Canton police officer, Gregory Bray, was dispatched to the store and talked with the manager, Dallas Young, and the cashier, Jeanne Bergin. Officer Bray asked for and received a description of the robber. Both individuals described the suspect as a black male in his 40s, five feet six inches tall, 180 pounds, black short hair, dark complected with no beard or mustache, wearing a gray hooded jacket. Officer Bray turned his information over to Detective Dan McCartney who was assigned to investigate the robbery. The next day, Detective McCartney talked to Mr. Young and obtained a copy of the store's digital surveillance tape. Detective McCartney decided to begin his investigation by viewing the videotape and begin a search of the general area around the store for potential suspects. While driving around the area, Detective McCartney spotted appellant talking to a white male at Third and Newton Northwest, no more than 200 to 300 yards from the store. Detective McCartney obtained appellant's name and Social Security number and went back to the station to research appellant's identity. Detective McCartney decided to investigate appellant further and located him in the 200 block of Newton Northwest. A photograph was taken of the appellant. *Page 4 
 {¶ 6} Detective McCartney put together two separate photographic lineups containing appellant's photograph, along with five other black males with similar characteristics. On May 16, 2006, he showed the photographic lineup to Ms. Bergin who identified appellant — number 5 — as the robber. On May 17, 2006, he showed a photographic lineup to Mr. Young who identified appellant number 6 — as the robber. At trial, both Mr. Young and Ms. Bergin testified that appellant was the male who robbed the store on May 15, 2006.
 {¶ 7} On the day of his trial, appellant elected to represent himself. After assuring that appellant understood the effect of his waiver of counsel, the trial court allowed appellant to proceed with the assistance of the public defender.
 {¶ 8} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty as charged in the indictment. Appellant was sentenced to 7 years in prison.
 {¶ 9} It is from this conviction and sentence that appellant appeals, raising the following assignments of error:
 {¶ 10} "I. THE JURY VERDICT FINDING APPELLANT GUILTY OF ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION."
 I. {¶ 11} The parties do not dispute that a robbery had occurred. In his sole assignment of error appellant contends that evidence introduced at trial to identify him as the assailant in the robbery is against the manifest weight of the evidence. We disagree. *Page 5 
 {¶ 12} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar.15, 2000), 9th Dist. No. 19600, at 3. "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenges questions whether the State has met its burden of persuasion." State v. Thompkins (1997), 78 Ohio St.3d 380, 390.
 {¶ 13} In determining whether a conviction is against the manifest weight of the evidence, an appellate court: "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
 {¶ 14} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 388. An appellate court must make every reasonable presumption in favor of the judgment and Findings of Fact of the trial court. Karches v. Cincinnati (1988), 38 Ohio St.3d 12,19. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Clemons (1998), 82 Ohio St.3d 438, 444, citingState v. Jenks, 61 Ohio St.3d at 273. Therefore, this Court's "discretionary power * * * should be exercised only in *Page 6 
the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172, 175; See, also,Otten, 33 Ohio App.3d at 340.
 {¶ 15} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t] o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶ 38,775 N.E.2d 498.
 {¶ 16} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 17} In the case at bar, Dallas Young testified:
 {¶ 18} "Q. . . . No facial hair, no mustache, no beard. Can you explain why you would pick a picture out of a person a day later that has a mustache and beard?
 {¶ 19} "A. People's hair grows quick. I mean, I'm not sure if it was a lineup from the day before, the day after, two months ago, two years ago, I'm not sure. I mean, I can't speak on when the picture was taken.
 {¶ 20} "Q. Okay. Now, you're a man, do you believe a person can grow a mustache and beard overnight? *Page 7 
 {¶ 21} "A. Not a full mustache or beard, no.
 {¶ 22} "Q. Okay. Here's a picture that's a little bit closer than those. It was taken 5/17, 2006. Can you clearly see a mustache and goatee on that picture?
 {¶ 23} "A. I can clearly see a mustache. I'm not definitely sure about a goatee because it looks like it blends in.
 {¶ 24} "Q. Look at it good.
 {¶ 25} "A. I can vaguely — I can see a little one, yeah. Not a thick one, no. I can see a little one, yes.
 {¶ 26} "* * *
 {¶ 27} "BY MR. BALDWIN:
 {¶ 28} "Q. Okay. So do I look like that person that was in the store that day?
 {¶ 29} "A. Yes, you do.
 {¶ 30} "* * *
 {¶ 31} "Q. Okay. One — a few more questions. Did Sergeant McCartney tell you anything about me when he presented this lineup to you?
 {¶ 32} "A. No. Not — not when he gave me the lineup, no.
 {¶ 33} "Q. Did he tell you my name?
 {¶ 34} "A. No.
 {¶ 35} "Q. Did he tell you that I was in custody?
 {¶ 36} "A. No. He said — the only thing I can remember he said about custody is, we have a suspect in custody, but he didn't say you, no.
 {¶ 37} "* * *
 {¶ 38} "BY MR. BALDWIN: *Page 8 
 {¶ 39} "Q. The same question as before, how can you state clearly that the person had no facial hair then still pick someone out? Were you coerced or misled into picking me out?
 {¶ 40} "A. No. Like I said, I wasn't sure if the photo was taken from previous history or that day or two weeks before. I had no recollection or no knowledge of when the picture was taken.
 {¶ 41} "Q. So that's why you chose to pick the picture even with facial hair because you didn't know when the picture was taken?
 {¶ 42} "A. Even with facial hair, it still, to me, was the person that did the crime."
 {¶ 43} (2T. at 168-169; 170; 171; 177-178).
 {¶ 44} Jeanne Bergin testified:
 {¶ 45} "BY MR. BALDWIN:
 {¶ 46} "Q. First off, do I look like the person that was in that store on 5/15?
 {¶ 47} "A. Yes, you do.
 {¶ 48} "Q. Have you ever heard of mistaken identity?
 {¶ 49} "A. It wasn't. It was you.
 {¶ 50} "* * *
 {¶ 51} "Q. Did Sergeant McCartney tell you anything about me when he showed you the picture?
 {¶ 52} "A. No.
 {¶ 53} "Q. Do you believe that sometimes the wrong person is arrested for a crime?
 {¶ 54} "A. I don't know. *Page 9 
 {¶ 55} "Q. Did he suggest to you in any way that I was that person that robbed you?
 {¶ 56} "A. No.
 {¶ 57} "Q. He didn't mention that I was in custody or a suspect or anything?
 {¶ 58} "A. No."
 {¶ 59} (2T. at 191; 194-95).
 {¶ 60} The jury in the case at bar had the opportunity to view the store's surveillance tape, and still photographs taken from the videotape.
 {¶ 61} Although appellant cross-examined the witnesses and argued that their initial description of the robber did not match appellant's physical description at the time of his arrest, and further that no physical evidence linked appellant to the crime, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 62} Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, Miller v. Miller (1988),37 Ohio St. 3d 71.
 {¶ 63} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of *Page 10 
witnesses and evidence is not." See, also State v. DeHass (1967),10 Ohio St.2d 230, syllabus 1.
 {¶ 64} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 65} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the crime of robbery.
 {¶ 66} Appellant's sole assignment of error is overruled. *Page 11 
 {¶ 67} For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. By Gwin, P.J., Hoffman, J., and Wise, J., concur *Page 12 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellant. *Page 1